IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALBERT SNYDER,                         *

     Plaintiff,                      *

       v.                           *          Civil Action No.  RDB-06-1389

FRED W. PHELPS, SR., et al.,           *

     Defendants.                     *

*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

This action arises out of a Complaint filed by Albert Snyder ("Plaintiff") against Fred W. Phelps, Sr. ("Phelps"), Westboro Baptist Church, Inc. ("WBC"), and several John and Jane Does ("Does") (collectively "Defendants").  Plaintiff alleges that Defendants committed several intentional torts against him when they intruded upon and staged protests at the funeral for his son, a Lance Corporal in the U.S. Marines Corps who was killed in Iraq, and published defamatory information about Plaintiff and his family on the Internet.  Pending before this Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction, personal jurisdiction, and venue, as well as insufficient service of process and failure to state a claim for which relief can be granted.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendants' Motion to Dismiss is DENIED.

## BACKGROUND

The facts are viewed in a light most favorable to Plaintiff.  Plaintiff is a resident of York, Pennsylvania.  His son, Matthew Snyder, was a Lance Corporal in the U.S. Marine Corps.  On March 3, 2006, Lance Corporal Snyder was killed in the line of duty while conducting combat

operations in Iraq.  After his body was transported back to the United States, Plaintiff and his

family arranged for funeral and burial services to be held on March 10, 2006, at St. John's

Catholic Church in Westminster, Maryland.

The Defendant Fred W. Phelps, Sr., pastor of Westboro Baptist Church, and other

members of the church attended Lance Corporal Snyder's funeral without invitation in order to

express their views against homosexuality, Catholicism, and the military.  Their messages

included "God hates fags," "thank God for dead soldiers," and other hate-filled sentiments. As

alleged by the Plaintiff, these Defendants have previously attended other military funerals as

uninvited persons.  They also maintain several websites[1] in which they endorse the same

messages and post accounts and pictures of their funeral protests.  On one of WBC's websites,

www.godhatesfags.com, the Defendants posted specific comments that Plaintiff and his wife

"raised [Matthew] for the devil," "RIPPED that body apart and taught Matthew to defy his

Creator, to divorce, and to commit adultery," "taught him how to support the largest pedophile

machine in the history of the entire world, the Roman Catholic monstrosity," and "taught

Matthew to be an idolator."

On June 5, 2006, Plaintiff filed suit in this Court against Defendants WBC, Phelps—the

pastor of WBC—and unnamed Jane and John Does who took part in WBC's activities but had

not yet been identified.  Plaintiff's Complaint alleges five separate causes of action: Count I -

Defamation; Count II - Intrusion upon Seclusion (Invasion of Privacy); Count III - Publicity

Given to Private Life (Invasion of Privacy); Count IV - Intentional Infliction of Emotional

---

[1]        Such websites include www.thesignofthetimes.net, www.smellthebrimstone.com, www.godhatesamerica.com, www.priestsrapeboys.com, www.godhatessweden.com, www.godhatescanada.com, and www.godhatesfags.com.

Distress; and Count V - Civil Conspiracy.  On August 2, 2006, after repeatedly attempting in

vain to serve Defendants with process, Plaintiff moved for a court order allowing alternative

service of process (Paper No. 12).  As a result of prior counsel having indicated representation of

Defendants, this Court, by Order dated August 2, 2006, granted Plaintiff's motion and allowed

Plaintiff to serve Defendants by "(1) posting a copy of the complaint and summons at the

defendants' last known addresses; (2) mailing a copy of the complaint and summons to the

defendants via first-class mail to their last known addresses; and (3) mailing a copy of the

complaint and summons to the defendants' attorneys via first-class mail."  Defendants filed the

instant Motion to Dismiss on September 18, 2006 (Paper No. 23), for  insufficient service of

process, lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and

failure to state a claim upon which relief can be granted.

<u>STANDARDS OF REVIEW</u>

"In deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff,

and 'the facts must be viewed as the plaintiff most strongly can plead them.'"  *Three M Enters.,*

*Inc. v. Tex. D.A.R. Enters., Inc*., 368 F. Supp. 2d 450, 454 (D. Md. 2005) (quoting *Sun Dun, Inc.*

*of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 1990)).

**I.      Service of Process**

Under Rule 12(b)(5), a defendant can move to dismiss a complaint where service of

process failed to comply with the requirements of Rule 4.  "Under Rule 4, plaintiff bears the

burden of establishing the validity of service once service has been contested."  *Quann v.*

*Whitegate-Edgewater*, 112 F.R.D. 649, 662 (D. Md. 1986) (citing *Norlock v. City of Garland*,

768 F.2d 654, 656 (5th Cir. 1985)).  Generally, when service of process gives the defendant

actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court.  *See Karlson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir. 1963); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Thus, failure to strictly comply with the requirements of Rule 4 does not necessarily invalidate the service of process.

## II.      Subject Matter Jurisdiction

Defendants first move to dismiss Plaintiff's case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  "The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005).  A court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

## III.     Personal Jurisdiction

Defendants next argue under Rule 12(b)(2) that this Court lacks personal jurisdiction over them.  "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  *Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp*

*Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986)).  In order for a district court to assert

personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the

exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the

exercise of jurisdiction must comport with the due process requirements of the Fourteenth

Amendment.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390,

396 (4th Cir. 2003).

Although "Maryland courts have consistently held that the state's long-arm statute is

coextensive with the limits of personal jurisdiction set by the due process clause of the

Constitution," *Carefirst of Maryland, Inc.*, 334 F.3d at 396-97, the Maryland Court of Appeals

still requires an analysis under the long-arm statute to establish personal jurisdiction.  *Mackey v.*

*Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).  A court's exercise of jurisdiction over

a nonresident defendant comports with due process if the defendant has "minimum contacts"

with the forum state, such that requiring the defendant to defend its interests in that state "does

not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v.*

*Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

## IV.    Improper Venue

A defendant may move to dismiss a claim for improper venue under Rule 12(b)(3).

Plaintiff has the burden of showing that venue is proper.  *Gov't of Egypt Procurement Office v.*

*M/V Robert E. Lee*, 216 F. Supp. 2d 468, 471 (D. Md. 2002).  In diversity cases filed in federal

court, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants
> reside in the same State, (2) a judicial district in which a substantial
> part of the events or omissions giving rise to the claim occurred, or
> a substantial part of property that is the subject of the action is

situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

## V.       Statement of Claim upon Which Relief Can Be Granted

Defendants finally seek to dismiss Plaintiff's action pursuant to Rule 12(b)(6).  "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal,* 248 F.3d at 325; *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

<u>DISCUSSION</u>

## I.       Service of Process

Defendants seek to dismiss the Complaint on the ground that they were not properly served with process.  Defendants' sole argument is that "there was no basis in law for [this

Court's] alternative service order." (Defs.' Mem. Supp. Mot. Dismiss 14.) The relevant facts

are as follows. Plaintiff filed his Complaint on June 5, 2006. On June 12, 2006, Margie J.

Phelps and Rachel I. Hockenbarger, of Phelps-Chartered in Topeka, Kansas, sent a letter to

Plaintiff's attorneys "to put [them] on notice of claims my clients will be pursuing against each

[attorney]

. . . and to afford [them] the opportunity to cease and desist [their] unlawful activity toward and

against my clients." (Pl.'s Mot. Alternative Service Ex. B.) In that letter, Ms. Phelps and Ms.

Hockenbarger repeatedly refer to "my clients" and even introduce the letter with the statement

"We represent Westboro Baptist Church (WBC) and her members." (*Id.*) In light of this letter,

Plaintiff attempted to serve process on those attorneys at the address of their law firm, as well as

on Defendant Phelps at his last known address, on Defendant WBC at its address, and on WBC's

resident agent, Abigail R. Phelps, at her work and state-registered addresses. (*See* White Aff. ¶¶

3-9.) Plaintiff's process server, Delbert White, attempted to serve the Defendants and their

lawyers approximately 26 times beginning June 12, 2006 according to his affidavit. (*Id.* ¶ 9.)

On June 22, 2006, Plaintiff sent waiver of service forms to Ms. Phelps and Ms.

Hockenbarger to present to their clients, the Defendants, since Mr. White was unsuccessful in

serving the Defendants themselves. (*See* Pl.'s Mot. Alternative Service Ex. C.) The Defendants

never returned the waiver of service forms, and Mr. White continued to attempt to serve them

with process unsuccessfully through July 18, 2006. (*Id.*) As a result of the Defendants'

continued effort to refuse service of process, the Plaintiff filed a Motion for Court Order for

Alternative Service. On August 2, 2006, this Court granted alternative service of process by (1)

posting a copy of the Complaint and summons at the Defendants' last known addresses; (2)

mailing a copy of the Complaint and summons to the Defendants via first-class mail to their last-known addresses; and (3) mailing a copy of the Complaint and summons to those attorneys who had indicated that they were representing the Defendants.  On August 23, 2006, present counsel for the Defendants filed a motion for an extension of time to file a responsive pleading.

Pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure, service of process upon an individual from whom a waiver has not been obtained may be effected in any judicial district of the United States pursuant to the law of the state in which the district court is located *or* in which service is effected.  Pursuant to Rule 2-121(b) of the Maryland Rules, when proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the complaint to the defendant's last known residence and delivering a copy of that complaint at the place of business of the defendant.  *See* Paul V. Niemeyer et al., *Maryland Rules Commentary* 104-08 (3d ed. 2003).  Based upon the submissions of the Plaintiff, this Court authorized the service of process upon these Defendants who had clearly indicated knowledge of this action through prior counsel.  Indeed, the specific procedures set forth in Rule 4 are not intended to constitute an exhaustive statement of procedures for effecting service of process in federal court actions.  Utilization of state procedures in an action in the federal court of that state is appropriate.  *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1062 (3d ed. 2002).

Thus, Defendants' Motion to Dismiss for insufficient service of process is DENIED.

## II.    Subject Matter Jurisdiction

Plaintiff claims that this Court has diversity jurisdiction over his case under 28 U.S.C. §

1332.[2]  (Compl. ¶ 2.)  Federal district courts "have original jurisdiction of all civil actions where

the matter in controversy exceeds the sum or value of $75,000" and is between citizens of

different states.  28 U.S.C. § 1332(a).  Defendants contend that Plaintiff's case lacks both

requirements.

## A.    Amount in Controversy

First, Defendants contend that Plaintiff failed to show that the matter in controversy

"exceeds the sum or value of $75,000."  (Defs.' Mem. Supp. Mot. Dismiss 4-6.)  Specifically,

they argue that Plaintiff's Complaint "merely parrots back the essential elements of 28 U.S.C. §

1332(a), rather than making any effort at showing how the matter in controversy exceeds

$75,000."  (*Id*. at 3.)

Where the amount in controversy is challenged, the U.S. Court of Appeals for the Fourth

Circuit has set forth a test for district courts to follow:

> First, the court should look to the face of the complaint itself to
> determine whether it is a legal certainty that plaintiff's claims do not
> reach the required amount.  Unless the claim for an amount over the
> jurisdictional prerequisite is made in bad faith, or unless it is plain
> from the complaint that an amount less than the jurisdictional amount
> is all that is at issue, the district court has jurisdiction over the case.
> . . . Second, if some event subsequent to the complaint reduces the
> amount in controversy, . . . the court must then decide in its discretion
> whether to retain jurisdiction over the remainder of the case.

*Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (internal citations omitted).  Plaintiff's

Complaint contains five separate causes of action and expressly seeks general, special, and

punitive damages, plus costs, which could easily total more than $75,000.  Under the  *Shanaghan*

---

[2]        Paragraph 2 simply asserts that "[t]he Court has jurisdiction under 28 U.S.C. §
1332, which provides for original district court jurisdiction for diversity of citizenship and where
the amount in controversy exceeds $75,000."  (Compl. ¶ 2.)

test, this Court cannot find that Plaintiff asserted damages in bad faith or that "it is plain from the complaint" that less than $75,000 is at issue.  Thus, Plaintiff's Complaint satisfies the amount in controversy requirement of 28 U.S.C. § 1332.

### B.    Diversity of Citizenship

Second, the Defendants challenge diversity of citizenship.  (Defs.' Mem. Supp. Mot. Dismiss 4-6.)  Plaintiff is a resident of York, Pennsylvania, and his Complaint alleges that none of the Defendants are citizens of Pennsylvania, thereby establishing diversity of citizenship under 28 U.S.C. § 1332. (Compl. ¶ 5-8.)  However, Defendants argue that Plaintiff's pleading does not adequately identify the states where they are citizens.

As to Defendant Phelps, they contend that Plaintiff's Complaint merely declares that Phelps "has an office in Kansas" rather than establishing his state citizenship.  (*Id*. at 5.)  "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the state."  *Newman-Green, Inc. v. Alfonzo-Larrian*, 490 U.S. 826, 828 (1989); *see also Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 726 (D. Md. 2006).  Although this Court may "defer ruling pending receipt at trial of evidence relevant to the jurisdictional question," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), there is no need to defer ruling on this question in this case.  Defendants do not dispute that Phelps is a citizen of the United States or Kansas, nor do they argue that he is a citizen of Pennsylvania.  The sole argument is that Plaintiff's Complaint did not contain the precise language establishing Phelps's domicile.  In his Response to Defendants' Motion to Dismiss, Plaintiff essentially supplemented his Complaint by claiming that "upon information and belief," Phelps "lives, resides and works" at the same Topeka address mentioned in the

Complaint.[3]  Thus, Plaintiff has sufficiently pled that Phelps is a citizen of Kansas.

As to Defendant WBC, Defendants contend that the Complaint fails to establish WBC as a "citizen" of Kansas.  (Defs.' Mem. Supp. Mot. Dismiss 5.)  As a corporation, Defendant WBC is considered "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Paragraph 7 of Plaintiff's Complaint refers to WBC as "a corporation organized under the laws of the state of Kansas with its principal place of business located at 3701 SW 12th Street, Topeka, Kansas 66604." Defendants apparently argue that the phrase "organized under the laws of the state of Kansas" does not mean that WBC is in fact "incorporated there."  Acting well within its authority under *Richmond, Fredericksburg & Potomac R.R. Co.*, *supra*, to "consider evidence outside the pleadings" in a 12(b)(1) motion, this Court verified that WBC is in fact incorporated in Kansas. Even without that finding, Plaintiff's Complaint sufficiently established that WBC's principal place of business is Kansas, and Defendants do not contend that the corporation is a citizen of Pennsylvania.  Thus, Plaintiff has sufficiently plead that WBC is a citizen of Kansas.

As to the John and Jane Does, Plaintiff alleges that they are members and agents of WBC and that they "reside in or around the [WBC] compound in Topeka, Kansas."  Obviously, until these people are identified, Plaintiff cannot assert with certainty their states of citizenship. However, the Complaint clearly states that the unnamed Defendants are active members of WBC which is based out of Kansas, and there is no reason to believe that they are citizens of Pennsylvania.

---

[3]    In a previous case, the United States Court of Appeals for the Tenth Circuit referred to Phelps's membership in WBC "in Topeka, Kansas."  *See Phelps, Sr. v. Hamilton*, 122 F.3d 1309, 1313 (10th Cir. 1997).

In conclusion, Plaintiff's Complaint sufficiently asserts diversity jurisdiction under 28 U.S.C. § 1332.  Thus, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

## III.    Personal Jurisdiction

Defendants next argue that this Court does not have personal jurisdiction over them.

### A.    Maryland's Long-Arm Statute

The first step under the two-part test in *Carefirst of Maryland, Inc., supra,* is to determine whether Maryland's long-arm statute authorizes jurisdiction over the Defendants.  The relevant portion of Maryland's long-arm statute allows jurisdiction over a defendant "who directly or by an agent . . . [c]auses tortious injury in the State by an act or omission in the State."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3).

Plaintiff alleges that Defendants Phelps and Does are members of WBC and attended Lance Corporal Snyder's funeral in Westminster, Maryland, where they engaged in conduct giving rise to the action in this case.  Plaintiff also alleges that the individual Defendants were acting as agents of WBC in addition to acting in their own capacities.  In addition, at least one website maintained by Defendants displays allegedly defamatory material about Plaintiff and pictures of Defendants' protest at Lance Corporal Snyder's funeral in Westminster, Maryland, including derogatory signs directed at Maryland.  Assuming, as this Court must, that those facts are true, the Defendants have "cause[d] tortious injury in the State" subjecting them to personal jurisdiction under the Maryland long-arm statute.

### B.    Constitutional Requirements

The second step of the jurisdictional test is to ensure that personal jurisdiction over the

Defendants complies with due process.

### 1.      Minimum Contacts: General Jurisdiction vs. Specific Jurisdiction

In order to determine what minimum contacts the Defendants must have with Maryland, the first inquiry is whether this Court has general or specific jurisdiction over the Defendants.

### a.      General Jurisdiction

"General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum state wholly unrelated to any contact it has with that forum, exists only where the foreign defendant's in-state activities amount to 'continuous and systematic' contact with the state." *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471-72 (D. Md. 2002) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)).  In this case, there is not enough information in the pleadings to conclude that Defendants have maintained "continuous and systematic" contact with Maryland, and Plaintiff himself has not asserted that general jurisdiction exists.  Accordingly this Court must focus on whether it has specific jurisdiction over Defendants.

### b.      Specific Jurisdiction

"[T]he level of 'minimum contacts' necessary to confer specific jurisdiction is significantly lower than that required for general jurisdiction." *Id.* (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998)).  Specific jurisdiction exists when a defendant purposefully established minimum contacts with the state and the cause of action arises out of those contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)*; ESAB Group*, 126 F.3d at 625 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  "In determining whether specific jurisdiction exists, we consider (1)

13

the extent to which the defendant has purposefully availed itself of the privilege of conducting

activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the

state; and (3) whether the exercise of personal jurisdiction would be constitutionally

'reasonable.'"   *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (citing *ALS Scan, Inc. v. Digital*

*Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105

(2003)).

In this case, Defendants Phelps and Does purposefully came to Maryland to spread

WBC's message by attending Lance Corporal Snyder's funeral and making comments about

Plaintiff and Maryland in particular.  In doing so, they acted both in their individual capacities

and as agents of WBC.  As part of this venture, Defendants posted similar statements about

Plaintiff and Maryland on the WBC website throughout their account of the aforementioned

protest.  By targeting Plaintiff at his son's funeral in Maryland, Defendants have "purposefully

availed [themselves] of the privilege of conducting activities" in Maryland.  This conduct also

gave rise to each of Plaintiff's claims, and it would certainly be reasonable for this Court to

exercise jurisdiction over defendants who engaged in such activities targeting Maryland.  Thus,

this Court has specific jurisdiction over Defendants with respect to Plaintiff's claims.

### 2.    Traditional Notions of Fair Play and Substantial Justice

The second due process requirement is that exercising personal jurisdiction over the

Defendants would not offend "traditional notions of fair play and substantial justice."  The

Supreme Court has identified several factors this Court must consider, including (1) the burden

on the Defendants, (2) the interests of Maryland, (3) Plaintiff's interest in obtaining relief, (4)

"the interstate judicial system's interest in obtaining the most efficient resolution of

controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of California*, 480 U.S. 102, 113 (U.S. 1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).

First, the burden on Defendants in litigating in Maryland would not be too great.  The members of WBC were able to come to Maryland in order to protest a funeral.  Because they are willing and able to expend the resources and time necessary to spread their message, Defendants would not be unduly inconvenienced by returning to Maryland and preparing for trial in association with this case.

Second, Maryland has an interest in protecting its citizens and businesses from disruptive conduct as alleged in this case.  Even though Plaintiff is a resident of Pennsylvania, the alleged torts arose out of Defendants' activities in this state.  The state has a particular interest in applying Maryland law to the type of conduct at issue in this case in order to deter Defendants or others from conducting similar activities in Maryland.

Third, trying Defendants in this Court would allow the "efficient resolution of controversies" because the funeral protest occurred in Maryland and both witnesses and evidence necessary to prepare and defend the case are in Maryland.

In conclusion, exercising personal jurisdiction over the Defendants in this Court would not offend "traditional notions of fair play and substantial justice."  Thus, for the reasons stated above, Defendants' Motion to Dismiss for lack of personal jurisdiction is DENIED.

## IV.    Venue

Defendants contend that this Court is not the proper venue for this case.  In diversity

cases, such as this, 28 U.S.C. § 1391(a)(2) provides that venue is appropriate in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated."  In this case,

Defendants protested a funeral in Westminster, Maryland, and posted accounts and pictures of

those Maryland protests on their website.  Thus, assuming the facts contained in the Complaint

to be true, it is clear that a "substantial part of the events" giving rise to Plaintiff's tort claims

occurred in Maryland.  Therefore, this Court is the proper venue for Plaintiff's case, and

Defendants' Motion to Dismiss for improper venue is DENIED.

## V.      Statement of Claim upon Which Relief Can Be Granted

Defendants first argue that the Complaint does not state a claim against each Defendant.

### A.      Count I - Defamation

Under Maryland law,

> a defamatory statement is one that tends to expose a person to
> public scorn, hatred, contempt or ridicule, thereby discouraging
> others in the community from having a good opinion of, or from
> associating or dealing with, that person. . . . To establish a prima
> facie case of defamation when the plaintiff is not a public figure,
> the plaintiff must prove: (1) that the defendant made a defamatory
> communication to a third person; (2) that the statement was false;
> (3) that the defendant was at fault in communicating the statement;
> and (4) that the plaintiff suffered harm.

*Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 305 (4th Cir. 2002) (quoting *Samuels v.

Tschechtelin*, 763 A.2d 209, 241-42 (Md. Ct. Spec. App. 2000) (internal quotation marks

omitted)).

Assuming the facts in the Complaint to be true, Plaintiff has sufficiently pled each of

these elements.  First, Plaintiff alleges in his Complaint that the derogatory statements made by

Defendants, both at his son's funeral and on the WBC website(s) are defamatory. (Compl. ¶¶ 18, 27.) Plaintiff also alleges that those statements were made "publicly" or at least to members of the funeral party. (*Id.* ¶¶ 18, 20, 33.) Second, the Complaint states that Defendants' statements were false. (*Id.* ¶¶ 27-29.) Third, Plaintiff alleges that Defendants were "at fault" in making the statements in that they acted "intentionally or with reckless disregard to the truth or veracity of the statements." (*Id.* ¶¶ 30-32.) Finally, Plaintiff alleges that the statements "have harmed" him. (*Id.* ¶ 31.)

Defendants take issue with each element of the cause of action, but none of their arguments can support dismissing the claim. First, they contend that the defamation claim would fail because the alleged statements are "pure opinion without allegations of fact." (Defs.' Mem. Supp. Mot. Dismiss 12-13.) Second, Defendants insist that "there can be no falsehood when mere opinions are stated." (*Id.* at 13.) However, whether the statements are "mere opinions" is an issue for the trier of fact. Third, Defendants contend that the Complaint "shows no fault as to Defendants Phelps and WBC" because of a lack of connection between them and the alleged statements. This argument is entirely without merit, as discussed in the preceding paragraph. Fourth, Defendants argue that the Complaint does not show "how" Plaintiff suffered harm. For the purposes of Rule 8(a)(2), merely alleging that harm was suffered is sufficient to state a claim for defamation.

Finally, Defendants argue that the First Amendment protection with respect to any statements they may have made. They cite *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), for the proposition that "opinion speech cannot amount to defamation." (Defs.' Mem. Supp. Mot. Dismiss 13.) The Defendants' reliance upon *Hustler Magazine* is misplaced. In *Hustler*

*Magazine*, a well-known minister[4] sued the magazine and its publisher for defamation, intentional infliction of emotional distress, and invasion of privacy after the magazine featured the minister in an "ad parody" portraying him in an immoral light. *Id.* at 47-49.  The Supreme Court held that the minister could not recover damages for intentional infliction of emotional distress, because the First Amendment protected the kind of speech, albeit offensive, the ad parody contained. *Id.* at 57.  There is nothing presently in the record in this case upon which this Court can find that the Snyder family were public figures.  Accordingly, based upon the facts presently before the Court, this case does not fall within the ambit of the *Hustler Magazine* opinion.[5]

In conclusion, Plaintiff has sufficiently stated a claim for defamation, and Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted is DENIED as to Count I.

**B.     Counts II & III - Intrusion upon Seclusion & Publicity Given to Private Life**

Defendants next allege that Plaintiff's Complaint fails to state a claim for intrusion upon seclusion and publicity given to private life, two of the four invasion of privacy claims recognized in Maryland.  *See Allen v. Bethlehem Steel Corp.*, 547 A.2d 1105, 1107 (Md. Ct.

_____

[4]     Plaintiff/Respondent Jerry Falwell hosted a nationally syndicated television show, founded a political organization, and founded a college in Virginia. *Hustler Magazine*, 485 U.S. at 57 n.5.

[5]     *Hustler Magazine* is easily distinguishable from the instant case in two other respects.  The only cause of action on appeal before the Supreme Court was intentional infliction of emotional distress.  Also, the "speech" at issue was published in an entertainment magazine and was obviously intended to be a joke; the ad itself contained the disclaimer "ad parody – not to be taken seriously."  In contrast, Defendants' "speech" is publicized on a church website and at private funerals and is clearly intended to be taken seriously.

Spec. App. 1988) (citing *Klipa v. Bd. of Educ. of Anne Arundel County*, 460 A.2d 601, 607 (Md.

Ct. Spec. App. 1983)).   In Maryland, "[o]ne who intentionally intrudes, physically or otherwise,

upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability

to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable

person."   Restatement (Second) of Torts § 652B; *see also Trundle v. Homeside Lending, Inc.*,

162 F. Supp. 2d 396, 401 (D. Md. 2001).   Also, "[o]ne who gives publicity to a matter

concerning the private life of another is subject to liability to the other for unreasonable invasion

of his privacy, if the matter publicized is of a kind which (a) would be highly offensive to a

reasonable person, and (b) is not of legitimate concern to the public."   *Furman v. Sheppard*, 744

A.2d 583, 588 (Md. Ct. Spec. App. 2000) (citing *Klipa*, 460 A.2d at 607; *see also* Restatement

(Second) of Torts § 652D.

    In their Motion to Dismiss, Defendants do not contend that the elements of these torts

were insufficiently pled.   Instead, they argue that the First Amendment protects their speech.

(Defs.' Mem. Supp. Mot. Dismiss 14.)   They again cite to *Hustler Magazine*, but, as discussed

*supra* in Part V.A., that case is distinguishable from the instant one and cannot support a

12(b)(6) motion to dismiss.   In addition, Defendants argue that WBC's actions are protected by

the First Amendment freedom of religion, as applied to the states through the Fourteenth

Amendment.[6]   At this early stage in the case, this Court does not have sufficient information

---

[6]     Defendants argue that "seeing that the Complaint makes allegations against WBC,
a church, First Amendment freedom of religion protections apply in this civil action to WBC."
(Defs.' Mem. Supp. Mot. Dismiss 14.)   The Free Exercise Clause protects activities, not actors;
it does not completely shield a religious institution from all forms of liability.   The Court
assumes that Defendants meant to raise the defense that WBC's *activities* are protected under
that constitutional provision.

before it to determine whether WBC's actions are afforded constitutional protection.[7]

In conclusion, Plaintiff has sufficiently stated a claim for intrusion upon seclusion and publicity given to private life, and Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted is DENIED as to Counts II and III.

### C.     Count IV - Intentional Infliction of Emotional Distress

In order to succeed on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the "defendant[s], intentionally or recklessly, engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress." *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000) (citing *Harris v. Jones*, 380 A.2d 611, 614 (1977)). Defendants again attack Plaintiff's claim on First Amendment grounds rather than on the substance of the Complaint. For the same reasons discussed *supra* in Part V.A., this case is distinguishable from *Hustler Magazine*, because Plaintiff is not a public figure. Also, as discussed in the preceding section, this Court does not yet need to decide whether WBC's actions are protected by the Free Exercise Clause. Thus, drawing all inferences in favor of Plaintiff, this Court finds that he has stated a claim for intentional infliction of emotional

---

[7]     Plaintiff notes that Defendant WBC was previously the subject of an intentional tort action for similar conduct. (Pl.'s Mem. Resp. Mot. Dismiss 9.) In *St. David's Episcopal Church v. Westboro Baptist Church, Inc.*, the Kansas Court of Appeals reviewed a temporary injunction that had been issued to enjoin WBC from staging protests outside of St. David's church during hours when religious services were held. 921 P.2d 821 (Kan. Ct. App. 1996). The court upheld the lower court's issuance of the temporary restraint after finding that "in addition to the government interest in protecting residential and clinical privacy, the government has a legitimate interest in protecting the privacy of one's place of worship as well." *Id*. at 830. The funeral at issue in this case took place at a Catholic church in Westminster, so arguably that case is persuasive. However, the court in *St. David's Episcopal Church* did not address whether WBC's speech was even constitutionally protected, because the lower court had not conducted an evidentiary hearing or made a finding on that issue, and the sole issue on appeal was whether the temporary injunction was appropriate.

distress.  Therefore, Defendants' Motion to Dismiss for failure to state a claim is DENIED as to Count IV.

### D.      Count V - Civil Conspiracy

"A civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff."  *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d  400, 409 (D. Md. 2001) (citing *Green v. Washington Sub. San. Commission,* 269 A.2d 815 (Md. 1970)).  Besides raising the same First Amendment arguments already addressed above, Defendants contend that "Maryland does not recognize a separate tort of civil conspiracy."[8]  (Defs.' Reply Pl.'s Opp'n Mot. Dismiss 10.)  They are partially correct.  The case they cite for support, *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, clarifies that "in order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity."  665 A.2d 1038, 1049 (Md. 1995).  If none of Plaintiff's other claims could survive a 12(b)(6) challenge, then his civil conspiracy claim would likewise fail.  However, because this Court finds that each of his other claims have been "adequately allege[d]," the Complaint states a claim for civil conspiracy as well.  Accordingly, Defendants' Motion to Dismiss for failure to state a claim is DENIED as to Count V.

---

[8]      Although Defendants did not raise the argument, "a conspiracy between a corporation and its agent[s] acting within the scope of [their] employment is a legal impossibility."  *See BEP, Inc.*, 174 F. Supp. 2d at 409 (citing *Kairys v. Douglas Stereo, Inc.*, 577 A.2d 386 (Md. Ct. Spec. App. 1990)).  However, construing the Complaint broadly and in favor of Plaintiff, it is not apparent whether the known and unknown Defendants who are members of WBC were acting as agents "within the scope of [their] employment."  This issue is best determined after discovery.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby DENIED and the case will proceed on all Counts.  A separate Order follows.

/s/_____
Richard D. Bennett
United States District Judge

October 30, 2006