IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALBERT SNYDER, | * | |
|    Plaintiff, | * | |
|    v. | * | Civil Action No.  RDB-06-1389 |
| FRED W. PHELPS, SR., et al., | * | |
|    Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This action arises out of a Complaint filed by Albert Snyder ("Plaintiff") against Fred W. Phelps, Sr. ("Phelps"), Westboro Baptist Church, Inc. ("WBC"), Rebekah Phelps-Davis ("Phelps-Davis"), and Shirley Phelps-Roper ("Phelps-Roper").  Plaintiff alleges that the individual Defendants and other members of the WBC committed several intentional torts against him when they intruded upon and staged protests at the funeral for his son, a Lance Corporal in the U.S. Marines Corps who was killed in Iraq, and published defamatory information about Plaintiff and his family on the Internet.  Pending before this Court is the Motion of Defendants Phelps-Davis and Phelps-Roper to Dismiss or for Summary Judgment and for Other Relief.[1]  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Phelps-Davis and Phelps-Roper's Motion to Dismiss or for

---

[1] Phelps-Davis and Phelps-Roper's request for a scheduling conference is moot in light of a telephonic conference held March 29, 2007 discussing the schedule to be followed in this case and this Court's letter order dated May 30, 2007 setting out the revised schedule.  In addition, their request for reconsideration of the Order denying their Motion to Stay Discovery is moot as the motion sought only to stay discovery until they filed and this Court ruled upon a motion to dismiss—which ruling is set forth in this Memorandum Opinion and separate Order.

Summary Judgment is DENIED.

## BACKGROUND

The facts are viewed in a light most favorable to the Plaintiff. Albert Snyder is a resident of York, Pennsylvania. His son, Matthew Snyder, was a Lance Corporal in the U.S. Marine Corps. On March 3, 2006, Lance Corporal Snyder was killed in the line of duty while conducting combat operations in Iraq. After his body was transported back to the United States, Plaintiff and his family arranged for funeral and burial services to be held on March 10, 2006, at St. John's Catholic Church in Westminster, Maryland.

It is undisputed that Defendants Shirley Phelps-Roper and Rebekah Phelps-Davis ("Defendants"), along with other members of the Westboro Baptist Church, headed by their father, Defendant Fred W. Phelps, Sr., picketed Lance Corporal Snyder's funeral without invitation. (Am. Compl. ¶ 21; Defs.' Mem. Supp. Mot. Dismiss ¶¶ 37, 44-47, 51). Their messages included "Semper Fi Fags," "God Hates America," and other similar sentiments expressing their views against homosexuality, Catholicism, and the military. (Defs.' Mem. Supp. Mot. Dismiss ¶¶ 81-82.) WBC and the individual Defendants also maintain several websites in which they endorse the same messages and post accounts and pictures of their funeral protests. On one of the websites, www.godhatesfags.com, the Defendants posted specific comments that Plaintiff and his wife "raised [Matthew] for the devil," "RIPPED that body apart and taught Matthew to defy his Creator, to divorce, and to commit adultery," "taught him how to support the largest pedophile machine in the history of the entire world, the Roman Catholic monstrosity," and "taught Matthew to be an idolator."

On June 5, 2006, Plaintiff filed suit in this Court against WBC, Phelps, and unnamed

Jane and John Does who took part in WBC's activities but had not yet been identified. The Complaint alleged five separate causes of action: Count I - Defamation; Count II - Intrusion upon Seclusion (Invasion of Privacy); Count III - Publicity Given to Private Life (Invasion of Privacy); Count IV - Intentional Infliction of Emotional Distress; and Count V - Civil Conspiracy. On August 2, 2006, after repeatedly attempting in vain to serve Phelps and WBC with process, Plaintiff moved for a court order allowing alternative service of process (Paper No. 12). As a result of prior counsel having indicated representation of Defendants Phelps and WBC, this Court, by Order dated August 2, 2006, granted Plaintiff's motion and allowed Plaintiff to serve Defendants by alternative means. On August 29, 2006, the Plaintiff moved for attorney's fees and costs associated with serving Phelps and the church (Paper No. 20). This Court granted the motion and awarded the Plaintiff $3150.00 on December 11, 2006.

Meanwhile, Defendants Phelps and WBC filed a Motion to Dismiss on September 18, 2006 (Paper No. 23), for insufficient service of process, lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. This Court denied Phelps and WBC's motion on October 30, 2006.

On February 23, 2007, Snyder filed, by leave of Court, an Amended Complaint adding as Defendants Shirley L. Phelps-Roper and Rebekah A. Phelps-Davis ("Defendants"), two daughters of the Defendant Fred W. Phelps, Sr. The substance of the Amended Complaint is similar to the original Complaint, bringing the same five causes of action—defamation, intrusion upon seclusion, publicity given to private life, intentional infliction of emotional distress, and civil conspiracy—against all four named Defendants.

Phelps-Roper and Phelps-Davis, proceeding in proper person, filed a Motion to Stay

Discovery (Paper No. 72) on April 16, 2007, which this Court denied on April 17. The two Defendants filed a Motion to Dismiss or for Summary Judgment and for Other Relief on April 24, 2007 (Paper No. 76), essentially reiterating the issues raised by their father in his previously denied motion to dismiss. This pending motion seeks dismissal under Rule 12(b) of the Federal Rules of Civil Procedure, summary judgment under Rule 56.

## STANDARDS OF REVIEW

"In deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc*., 368 F. Supp. 2d 450, 454 (D. Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 1990)).

**I.     Subject Matter Jurisdiction**

The individual Defendants first move to dismiss Plaintiff's case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005). A court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

**II.    Personal Jurisdiction**

The individual Defendants next argue under Rule 12(b)(2) that this Court lacks personal

jurisdiction over them. "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp Houdailles, Inc*., 800 F.2d 1305, 1307 (4th Cir. 1986)). In order for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Although "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution," *Carefirst of Maryland, Inc.*, 334 F.3d at 396-97, the Maryland Court of Appeals still requires an analysis under the long-arm statute to establish personal jurisdiction. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). As to the second prong, a court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that requiring the defendant to defend its interests in that state "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

**III.    Improper Venue**

5

A defendant may move to dismiss a claim for improper venue under Rule 12(b)(3). The plaintiff has the burden of showing that venue is proper. *Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 471 (D. Md. 2002). In diversity cases filed in federal court, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

## IV.     Statement of Claim upon Which Relief Can Be Granted

Phelps-Davis and Phelps-Roper finally seek to dismiss Snyder's action pursuant to Rule 12(b)(6). "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff

cannot prove any set of facts in support of his claim entitling him to relief." *Migdal,* 248 F.3d at 325; *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## V. Summary Judgment

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005)

7

(citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

DISCUSSION

**I.     Subject Matter Jurisdiction**

Defendants Shirley Phelps-Roper and Rebekah Phelps-Davis have challenged this Court's jurisdiction over the pending lawsuit on a number of grounds.

    **A.     Diversity Jurisdiction**

Plaintiff Albert Snyder claims that this Court has jurisdiction over his case based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.[2] (Am. Compl. ¶ 2.) Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332(a). The Defendants contend that Plaintiff's case lacks both requirements.

        **1.     Amount in Controversy**

First, Defendants contend that Plaintiff failed to show that the matter in controversy "exceeds the sum or value of $75,000." (Defs.' Mem. Supp. Mot. Dismiss 46.) Specifically, they argue that "[t]here is insufficient evidence to sustain a claim for damages" because "*all* of the evidence indicates that his reputation, if anything, was enhanced by defendants' words." (*Id.* (emphasis in original).)

Where the amount in controversy is challenged, the United States Court of Appeals for

---

[2] Paragraph 2 of the Amended Complaint asserts that "[t]he Court has jurisdiction under 28 U.S.C. § 1332, which provides for original district court jurisdiction for diversity of citizenship and where the amount in controversy exceeds $75,000." (Am. Compl. ¶ 2.)

the Fourth Circuit has set forth a test for district courts to follow:

> First, the court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount. Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case. . . . Second, if some event subsequent to the complaint reduces the amount in controversy, . . . the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case.

*Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (internal citations omitted).  Plaintiff's Amended Complaint contains five separate causes of action and expressly seeks general, special, and punitive damages, plus costs, which could easily total more than $75,000.  As noted in this Court's previous Memorandum Opinion, under the *Shanaghan* test, there is no indication that Plaintiff asserted damages in bad faith or that "it is plain from the complaint" that less than $75,000 is at issue.  The Defendants note that the "real issue here is that plaintiff doesn't like defendants' words, which is insufficient to establish damages." (Defs.' Mem. Supp. Mot. Dismiss 46.)  However, whether Snyder actually sustained damages is for the finder of fact to determine.  Thus, Plaintiff's Amended Complaint satisfies the amount in controversy requirement of 28 U.S.C. § 1332.

### 2.      Diversity of Citizenship

Second, the Defendants challenge diversity of citizenship by incorporating the arguments raised by Defendants Phelps and WBC in their September 18, 2006 Motion to Dismiss.  (Defs.' Mem. Supp. Mot. Dismiss 47.)  It is clear that both Shirley Phelps-Roper and Rebekah Phelps-Davis are residents of Topeka, Kansas, and Plaintiff is a resident of York, Pennsylvania.  In addition, this Court previously held in the October 30, 2006 Memorandum Opinion that Phelps

and WBC are residents of Kansas.  Accordingly, there is diversity of citizenship pursuant to 28 U.S.C. § 1332.

### B. First Amendment Issue

The Defendants also argue that this Court lacks subject matter jurisdiction over all the claims in the case, because "ultimately in order to determine the outcome of this case, the Court or jury would be required to determine whose religious viewpoint is right." (Defs.' Mem. Supp. Mot. Dismiss 24.)  It is well-established that "the civil courts of our country are obliged to play a limited role in resolving church disputes"—a restriction "premised on First Amendment principles that preclude a court from deciding issues of religious doctrine and practice, or from interfering with internal church government." *Dixon v. Edwards*, 290 F.3d 699, 714 (4th Cir. 2002).  "When a civil dispute merely involves a church as a party, however, and when it can be decided without resolving an ecclesiastical controversy, a civil court may properly exercise jurisdiction." *Id.*

At this stage in the litigation, it is not clear whether the trier of fact would have to resolve "an ecclesiastical controversy" on any or all of Plaintiff's claims.  Discovery has not commenced as to Defendants Phelps-Davis and Phelps-Roper, nor has it been completed as to Defendants Phelps and WBC.  As a result, this Court cannot determine at this time exactly what statements Snyder contends gave rise to his causes of action or whether they are religious in context.  For example, some of the so-called religious phrases and messages cited by the Defendants in their memorandum were not even mentioned in the Amended Complaint.  (*See* Defs.' Mem. Supp. Mot. Dismiss 24.)

A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not

in dispute and the moving party is entitled to prevail as a matter of law." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  With an incomplete record, this Court cannot find that the jurisdictional facts are "not in dispute."  Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

## II.     Personal Jurisdiction

Defendants Phelps-Davis and Phelps-Roper next argue that this Court does not have personal jurisdiction over them.  (Defs.' Mem. Supp. Mot. Dismiss 30-32.)  The Defendants acknowledge that this Court's October 30, 2006 ruling on Phelps and WBC's motion to dismiss addressed essentially the same issue.  (*Id*. at 30.)  However, they challenge two of this Court's conclusions as to the second prong of the jurisdictional test articulated in *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  That prong requires that exercising personal jurisdiction complies with the due process requirements of the Fourteenth Amendment.  As noted above, this can be achieved if the defendant has "minimum contacts" with the forum state, such that requiring the defendant to defend its interests in that state "does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### A.     Minimum Contacts: General Jurisdiction vs. Specific Jurisdiction

In order to determine what minimum contacts Phelps-Davis and Phelps-Roper must have with Maryland, the first inquiry is whether this Court has general or specific jurisdiction over them.

#### 1.     General Jurisdiction

11

"General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum state wholly unrelated to any contact it has with that forum, exists only where the foreign defendant's in-state activities amount to 'continuous and systematic' contact with the state." *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471-72 (D. Md. 2002) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)). In this case, there is not enough information in the pleadings to conclude that Phelps-Davis and Phelps-Roper have maintained "continuous and systematic" contact with Maryland, nor has the Plaintiff asserted that general jurisdiction exists. Accordingly this Court must focus on whether it has specific jurisdiction over Defendants.

### 2. Specific Jurisdiction

"[T]he level of 'minimum contacts' necessary to confer specific jurisdiction is significantly lower than that required for general jurisdiction." *Id.* (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998)). Specific jurisdiction exists when a defendant purposefully established minimum contacts with the state and the cause of action arises out of those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)*; ESAB Group*, 126 F.3d at 625 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105

12

(2003)).

In this case, Defendants Phelps-Davis and Phelps-Roper purposefully came to Maryland to spread WBC's message by protesting outside Lance Corporal Snyder's funeral and making comments about Plaintiff and Maryland in particular. In doing so, they acted both in their individual capacities and as agents of WBC. They also posted similar statements about Plaintiff and Maryland on the WBC website concerning the protest in question. By targeting Plaintiff at his son's funeral in Maryland, Defendants have "purposefully availed [themselves] of the privilege of conducting activities" in Maryland. This conduct also gave rise to each of Plaintiff's claims, and it would certainly be "reasonable" for this Court to exercise jurisdiction over defendants who engaged in such activities targeting Maryland. Thus, this Court has specific jurisdiction over the two Defendants with respect to Plaintiff's claims.

### B.   Traditional Notions of Fair Play and Substantial Justice

The second due process requirement is that exercising personal jurisdiction over the Defendants would not offend "traditional notions of fair play and substantial justice." The Supreme Court has identified several factors this Court must consider, including (1) the burden on the Defendants, (2) the interests of Maryland, (3) Plaintiff's interest in obtaining relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of California*, 480 U.S. 102, 113 (U.S. 1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).

First, the burden on Defendants to litigate in Maryland would not be too great. The

members of WBC were able to come to Maryland in order to protest a funeral, and Phelps-Roper and Phelps-Snyder have admitted that they have protested funerals in the state on other occasions. (Defs.' Mem. Supp. Mot. Dismiss ¶¶ 84-87.)  Defendants would not be unduly inconvenienced by returning to Maryland and preparing for trial in association with this case.

Second, while it is undisputed that Plaintiff is a resident of Pennsylvania, the alleged torts arose out of Defendants' activities in at this state.  Maryland has a particular interest in applying its common law to the type of conduct at issue in this case.  Defendants contend, however, that "Maryland's interest in this matter is reflected in" a state law that requires picketers to stand 100 feet from a funeral.[3]  (Defs.' Mem. Supp. Mot. Dismiss 30-31.)  They argue that this law indicates that the type of protesting in which the Defendants engaged is protected and that Maryland has an interest in not deterring protected activities.  Defendants' argument is misplaced, however.  (*Id*.)  While it is true that Maryland has an interest in protecting constitutionally protected speech and religious activities, the fact that the state specifically made it a crime for protestors to stand near funerals suggests its interest in protecting the sanctity of those events.  Plus, the specific issue in this case is whether the Defendants' conduct—compliant with Maryland's criminal statute or not—caused injury to the Plaintiff.  Accordingly, this Court finds that Maryland has a sufficient interest in the outcome of this litigation.

Third, Despite Defendants' arguments, conducting a trial in this Court would allow the "efficient resolution of controversies."  They argue that this Court incorrectly concluded in its

---

[3] Under Maryland law, "[a] person may not engage in picketing activity within 100 feet of a funeral, burial, memorial service, or funeral procession that is targeted at one or more persons attending the funeral, burial, memorial service, or funeral procession." Md. Code. Ann., Crim. Law § 10-205(c) (LexisNexis 2006).

previous Memorandum Opinion that "witnesses and evidence necessary to prepare and defend the case are in Maryland" because the Defendants are Kansas residents, the Plaintiff is a Pennsylvania resident, and the website is maintained in Kansas. (Defs.' Mem. Supp. Mot. Dismiss 32.) However, the parties were not the only people present at the funeral, so potential witnesses likely reside in Maryland, and evidence concerning the Defendants' websites on the Internet can just as easily be obtained in Maryland as in Kansas. Thus, this case can be efficiently resolved in Maryland.

In conclusion, exercising personal jurisdiction over the Defendants in this Court would not offend "traditional notions of fair play and substantial justice." Accordingly, Defendants' Motion to Dismiss for lack of personal jurisdiction is DENIED.

### III.    Venue

Defendants Phelps-Davis and Phelps-Roper contend that this Court is not the proper venue for this case. In doing so, they once again adopt the arguments raised by their father, Fred W. Phelps, Sr., and the WBC in their earlier Motion to Dismiss. Thus, for the same reasons stated in this Court's October 30, 2006 Memorandum Opinion, this Court is the proper venue for this case. Accordingly, Defendants' Motion to Dismiss for improper venue is DENIED.

### IV.    Statement of Claim upon Which Relief Can Be Granted

Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on the grounds that it does not state a claim against them. In its October 30, 2006 Memorandum Opinion and accompanying Order, this Court previously held that the Plaintiff sufficiently pled each of the five Counts of his Complaint. As the Amended Complaint is virtually unchanged with respect to each of the five Counts, this Court hereby incorporates its prior reasoning to hold

that the Amended Complaint satisfies the pleading requirements of Rule 8(a) and states a claim upon which relief can be granted.  Nonetheless, the novel arguments raised by Defendants Phelps-Davis and Phelps-Roper will be addressed.

### A.     Count I - Defamation

Defendants argue that Plaintiff has failed to state a claim for defamation because there is no indication that he suffered any damage as a result of the Defendants' conduct and that their evidence "reflects that plaintiff is a public figure, at least for a limited purpose."  (Defs.' Mem. Supp. Mot. Dismiss 39-40.)  However, these are issues of fact that must be resolved by the trier of fact after discovery, not at the motion to dismiss stage.

In addition, Phelps-Davis and Phelps-Roper argue that they are entitled to a qualified privilege because the messages they conveyed are a matter of public interest.  (Defs.' Mem. Supp. Mot. Dismiss 42.)  It is true that "Maryland courts recognize a common law qualified privilege where an individual 'publishes a statement in good faith in furtherance of . . . interests shared with others. . . .'" *Rabinowitz v. Oates* 955 F. Supp. 485, 488 (D. Md. 1996) (quoting *Mareck v. Johns Hopkins University,* 482 A.2d 17, 21 (Md. Ct. Spec. App. 1984), *cert. denied,* 487 A.2d 292 (Md. 1985)).  As the Maryland Court of Appeals has explained:

> The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest. . . . Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.

*Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) (quoting *Marchesi v. Franchino*, 387 A.2d

1129, 1131 (Md. 1978)); *see also McDermott v. Hughley*, 561 A.2d 1038, 1046 (Md. 1989) ("A statement is accorded a qualified privilege only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto.") (citation and internal quotation marks omitted). At this early stage before the conclusion of discovery, this Court does not have sufficient information concerning the alleged defamatory statements to make a determination whether they were matters of public interest.

  **B.  Counts II & III - Intrusion upon Seclusion & Publicity Given to Private Life**

  Defendants contend that Plaintiff has failed to state a claim for intrusion upon seclusion because the protestors stayed more than 1000 feet from the location of the funeral of his son and left once the ceremony began. (Defs.' Mem. Supp. Mot. Dismiss 34.) They cite *Jennings v. University of North Carolina, at Chapel Hill*, in which the United States Court of Appeals for the Fourth Circuit held that "[g]enerally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." 444 F.3d 255, 281 (4th Cir. 2006). However, that case is distinguishable, because the Fourth Circuit applied North Carolina law, not Maryland law. In Maryland, "[t]o determine whether the [conduct] constituted an actionable intrusion under Maryland law, we ask whether there has been an intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." *Furman v. Sheppard*, 744 A.2d 583, 586 (Md. Ct. Spec. App. 2000). In the private setting of a funeral, physical invasion would not be necessary to intrude upon the privacy of the family of the deceased. In addition, the Supreme Court has specifically recognized the need to protect the solemnity of funerals from "unwanted

public exploitation." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 168 (2003). Thus, the Plaintiff's allegations that the Defendants protested at his son's funeral without invitation and that it was "a private event" are sufficient to state a claim for intrusion upon seclusion. (*See* Compl. ¶¶ 21-22.)

Defendants also argue that Plaintiff himself made the funeral and certain facts about himself and his family public thereby invalidating any claim that the Defendants gave publicity to his private life. However, this would require a *factual* determination to be made that Snyder released private information to the public, which is not this Court's function when ruling on a Rule 12(b)(6) motion to dismiss.

In conclusion, Plaintiff has stated a claim upon which relief can be granted with respect to all five Counts of the Amended Complaint. Accordingly, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED.

## V.     Alternative Motions

### A.     Summary Judgment

Defendants have moved in the alternative for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. As a general rule, 'summary judgment is appropriate only after adequate time for discovery.'" *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 419 (D. Md. 2006) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). A party opposing summary judgment may submit an affidavit pursuant to Rule 56(f) stating his need to conduct discovery in order to present evidence of a genuine issue of material fact. *Id.*

In this case, discovery has already commenced as to the two Defendants named in the original complaint: Fred W. Phelps, Sr., and Westboro Baptist Church. However, Snyder

submitted an affidavit requesting time to conduct discovery in order to oppose Phelps-Davis and Phelps-Roper's motion for summary judgment. (*See* Snyder Aff. ¶¶ 5, 7, 9-11.) Specifically, he contends that depositions of the two *pro se* Defendants, witnesses present at the funeral in question, experts, and medical examinations are essential to proving his claims. (*Id.*) This Court finds that the Plaintiff's affidavit complies with the requirements of Rule 56(f) and will allow him time to conduct discovery, as specified in the revised scheduling order issued May 30, 2007, in order to oppose Defendants' motion for summary judgment. Accordingly, Defendants' motion for summary judgment is DENIED.

### B.    Motion to Strike

Finally, Defendants have moved in the alternative to strike from the Amended Complaint "all references to funeral pickets, religious expressions, commentary by WBC members, or Web pages, which do not mention or refer to plaintiff or his son and which do not directly relate to the funeral of Lance Cpl. Matthew A. Snyder." (Defs.' Mem. Supp. Mot. Dismiss 48.) Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The phrases Defendants want stricken from the Amended Complaint are not redundant. They purport to offer relevant background information about the WBC's practices and beliefs and quote from websites allegedly maintained by the Defendants. In light of the fact that motions to strike are highly disfavored, see *Waste Management Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), this Court will DENY the Defendants' motion to strike.

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby DENIED and the

case will proceed on all Counts.  A separate Order follows.

                                                    /s/  
                                                    Richard D. Bennett  
                                                    United States District Judge

Date: June 4, 2007