IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Albert Snyder,

Plaintiff,

vs.                                           Case No. 06-cv-1389

Fred W. Phelps, Sr., et al.,

Defendants.

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF BILL OF COSTS**

Defendants Westboro Baptist Church (WBC), Fred W. Phelps (Phelps) through counsel, and Shirley Phelps-Roper and Rebekah Phelps-Davis (Pro Se), submit the following memorandum of authorities in support of their Bill of Costs submitted herein.

Defendants request reimbursement in the total amount of $96,740.21, including the following items:

1.      Docket fees for appeals to the Fourth Circuit of $915.00.  Note:  Of the $455.00 paid for the third appeal, $450.00 was included in the Fourth Circuit mandate, leaving $5.00 of that fee.  Defendants took two other interim appeals in this case, which is why there are an additional $910.00 of costs under this item.

2.      Fees for service of summons and subpoena in the amount of $2,296.00. An itemization of these costs is included in the attachments to the Bill of Costs.

3.      Fees for the court reporter in the amount of $13,900.06.  This includes $7,031.55 for transcripts for the appeal, as well as $6,868.51 for trial and

1

hearing transcripts at the trial court level, and deposition transcripts (the vast majority of which were taken by plaintiff, and used by plaintiff at trial), all as itemized in the attachments to the Bill of Costs.

4.      Fees and disbursements for printing in the amount of $604.62.  The items included in this are set out in the attachments to the Bill of Costs, and are for copies obtained of various items before and during trial.  This does not include in-house copying costs, which is addressed at paragraph 6 below.  It also does not include the costs of copying a lengthy appendix and briefs on appeal, which costs were included in the mandate from the Fourth Circuit.

5.      Fees for witnesses of $806.93.  The witnesses are itemized on p. 2 of the Bill of Costs.  (Note:  There is more than one witness per line because that was the only way to fit all 14 instances of paying a witness fee/mileage check to a witness.)  These costs are routinely allowed.

6.      Fees for copying papers necessary for the case in the amount of $3,426.50.  This does not include items filed with the Fourth Circuit; it only includes items filed and copied by defendants at the trial court level.   An itemization of these copying costs by date, item copied, and number of copies made, is attached to the Bill of Costs.  These costs are routinely allowed.

7.      Costs as shown on the Mandate of the Court of Appeals from the Fourth Circuit in the amount of $16,510.80.  The mandate of October 16, 2009 included these costs, and they reflect the costs of $450.00 for a filing fee

for the appeal, and copying costs for the appendix and briefs.  A copy of the mandate is attached to the Bill of Costs.

8.      Other costs are requested in the amount of $58,280.30, including those listed below; authorities are set forth below in support of awarding these costs.

     a.   Express mail, federal express and courier costs at the trial court level of $1,150.66 and at the appellate level of $229.16.  These costs are itemized with supporting documents in the attachments to the Bill of Costs.

     b.   Costs of CDs of oral argument at the Fourth Circuit of $26.00.

     c.   Expert witness fees of $36,180.28, most of which is for expert witness fees paid by defendants to witnesses who testified at trial, and a small portion of which was paid to one of plaintiff's expert witnesses, Dr. Willard, for the time spent in his deposition.  These costs are itemized with supporting documents in the attachments to the Bill of Costs.

     d.   Reimbursement for counsel for Westboro Baptist Church, Inc. and Fred W. Phelps, Sr., for travel costs during trial in the amount of $472.

     e.   Travel by defendants and their support people, defense witnesses, and family members at various times for depositions, a pretrial conference, trial (all to the Baltimore, Maryland area; Mr. Katz to Kansas City, Missouri for the deposition of Fred Phelps, Sr.), and to Richmond, Virginia (counsel and parties) for argument to the Fourth Circuit. These costs are itemized in the attachments to the Bill of Costs.

9.      Attachments to the Bill of Costs submitted herewith include:

    a.  Itemization of the "other" items for which reimbursement is requested. (1 page.)

    b.  Itemization of copying costs by defendants. (3 pages.)  These items include several motions to dismiss, for summary judgment, to clarify, or for other relief, based on the First Amendment claims which prevailed on appeal.  These items also include filings that were necessitated by sweeping allegations by plaintiff in pleadings which constituted a comprehensive challenge to many aspects of defendants' religious beliefs and religious practices and picketing ministry,

    c.  Itemization of appeal costs not covered by the mandate.  (1 page.)

    d.  Order from the Fourth Circuit dated October 16, 2009, taxing costs of $16,510.80. (2 pages.)

    e.  Itemization of various costs at the trial court level, with supporting documents attached. (7 pages with multiple pages attached containing various receipts.)

10.     Defendants submit that all of these expenses should be included in costs taxed against plaintiff because under the full circumstances of this case, where the First Amendment should have been applied resulting in dismissal early in the case, it is more appropriate for plaintiff (including from his fund raising efforts through his Website) to bear these costs. These costs are ones actually incurred, and do not reflect all of the costs of

this litigation.   Defendants do not desire or seek any profit; rather to simply recoup some of the costs of litigation.

This case was filed in June of 2006.  Immediately after it was filed, defendants WBC and Phelps sought dismissal on First Amendment grounds.  Thereafter pro se defendants Shirley Phelps-Roper and Rebekah Phelps-Davis were added, and they also immediately sought dismissal on First Amendment grounds.  Throughout this case defendants urged the Court not to let the case proceed to trial; not to instruct the jury as it was instructed; and to dismiss this action on the basis of the First Amendment. All of those requests were denied; substantial discovery was done by plaintiff's counsel, including depositions which the Court required defendants to travel to Baltimore to participate in; a lengthy pretrial conference was held in Baltimore; and a lengthy trial was held in Baltimore in October 2007.   After a later-reduced jury verdict was rendered in the amount of nearly $11 million, further filings were made by defendants seeking relief under the First Amendment, all such relief being denied.

Then defendants appealed to the Fourth Circuit Court of Appeals. Defendants and their counsel traveled to Richmond, Virginia for oral argument in December 2008; on September 24, 2009, the Fourth Circuit issued an order setting aside the verdict and finding that based on First Amendment grounds this case should have been dismissed, as a matter of law.  On October 16, 2009, the Fourth Circuit issued its mandate and order

for some of the costs incurred on appeal in the amount of $16,510.80.  On October 23, 2009, an untimely objection was filed by plaintiff to the costs included by the Fourth Circuit in the mandate.

At p. 22 of its 9/24/09 opinion, the Fourth Circuit said: "As explained below, the Defendants correctly contend that the district court erred in permitting the jury to decide legal issues reserved to the court, and then by denying the Defendants' request for judgment as a matter of law." And, "Assuming that the district court otherwise applied the proper legal standards to its analysis of the Defendants' First Amendment contentions, it fatally erred by allowing the jury to decide relevant legal issues." Further, at pp. 23-24, the Fourth Circuit said:

> The district court thus decided that it was for the jury — not the court — to assess the preliminary issue of the nature of the speech involved, and to then decide whether such speech was protected by the Free Speech Clause. Thus, the jury was erroneously tasked with deciding whether the Defendants' speech was "directed specifically at the Snyder family," and, if so, whether it was so "offensive and shocking as to not be entitled to First Amendment protection." J.A. 3114; *see also id.* ("You must balance the Defendants' expression of religious belief with another citizen's right to privacy and his or her right to be free from intentional, reckless, or extreme and outrageous conduct causing him or her severe emotional distress."). At the least, therefore, the judgment must be vacated and a new trial awarded, in that Instruction No. 21 authorized the jury to determine a purely legal issue, namely, the scope of protection afforded to speech under the First Amendment.
>
> As previously noted, however, a new trial is unnecessary if the Defendants can prevail as a matter of law after our independent examination of the whole record. *See Milkovich*, 497 U.S. at 17. We are thus obliged to apply the applicable legal framework to the Defendants' various protest signs and written Epic, and decide if the Defendants are entitled to judgment as a matter of law.

The district court also erred when it utilized an incorrect legal standard in its Post-Trial Opinion. In assessing the Defendants' First Amendment contentions, the court focused almost exclusively on the Supreme Court's opinion in *Gertz*, which it read to limit the First Amendment's protections for "speech directed by private individuals against other private individuals." *Snyder v. Phelps*, 533 F. Supp. 2d 567, 577 (D. Md. 2008). The court therefore assessed whether Snyder was a "public figure" under *Gertz* and whether Matthew's funeral was a "public event." *See id.*

The Supreme Court has created a separate line of First Amendment precedent that is specifically concerned with the constitutional protections afforded to certain *types* of speech, and that does not depend upon the public or private status of the speech's target. *See Milkovich*, 497 U.S. at 16; *Hustler Magazine*, 485 U.S. at 50. Thus, even if the district court (as opposed to the jury) concluded that Snyder and his son were not "public figures," such a conclusion alone did not dispose of the Defendants' First Amendment contentions. In focusing solely on the status of the Snyders and the funeral, and not on the legal issue concerning the nature of the speech at issue, the court failed to assess whether the pertinent statements could reasonably be interpreted as asserting "actual facts" about an individual, or whether they instead merely contained rhetorical hyperbole. *See Milkovich*, 497 U.S. at 20; *CACI*, 536 F.3d at 293. Whether a statement can reasonably be interpreted as stating actual facts about an individual is a question of law for the court, *see CACI*, 546 F.3d at 293-94, and the district court failed to consider that issue in its Post-Trial Opinion. Consequently, we must assess the content of the Defendants' protest signs as well as the Epic, and determine whether such speech is entitled to constitutional protection.

The Court concluded this analysis saying, at p. 31, "we are constrained to conclude that the Defendants' signs and Epic are constitutionally protected."

All of the legal reasons given by the Fourth Circuit for setting aside this verdict, and stating repeatedly that the legal issues raised by the complaint in this case should have been decided by the Court, were legal reasons raised with the Court in various filings by the defendants throughout the case, from beginning to end.  For this reason defendants respectfully submit that the costs incurred by

them in connection with this case as set out in the Bill of Costs and attachments should be reimbursed, pursuant to 28 U.S.C. § 1920; Rule 54, Fed.R.Civ.P., Rule 11, Fed.R.Civ.P., Rule 26, Fed.R.Civ.P., L.R. 109, the discretion of this Court, and all other applicable statutes, rules and legal authorities.

Defendants also note that plaintiff and his counsel made public pronouncements that they were soliciting funds from the public, so the funds collected through that means should be used to pay these costs as well. Further, concerning plaintiff's ability to pay, he and his counsel were aware that costs are routinely awarded to the prevailing party; yet they chose to engage in substantial discovery and have a lengthy trial, all over defendants' strenuous objection, routinely deriding the First Amendment issues clearly raised by this case, as they also mocked the content of what these defendants believe. They have joined the national public debate about whether these things defendants say about this nation and God are true,

Further, though plaintiff made a declaration to the Fourth Circuit on October 23, 2009, after the mandate had issued from that Court (on October 16), without any supporting documentation or other information beyond bare and general assertions, that taxing costs would impose a hardship, plaintiff has failed to make a showing of indigence. In *Smith v. Augustine*, Case No. 07 C 81, 2009 U.S.Dist. LEXIS 51860 (N.D. Ill., June 18, 2009), where the Court taxed costs against an individual plaintiff in the amount of over $35,000, plaintiff claimed she was unable to pay because of her income level and other financial obligations. The Court rejected this claim saying at 2009 U.S. Dist. LEXIS 51860 at 5-6:

…. Plaintiff cites *Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir. 2006), for the contention that a losing party's claimed inability to pay costs can be enough to overcome the Rule 54(d) presumption and prevent a court from assigning costs. Plaintiff misconstrues the indigency analysis set forth in *Rivera*. *Rivera* requires the court to "make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future" before examining "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case" to determine whether allowing costs is still reasonable. *Rivera*, 469 F.3d at 635 (internal quotation omitted). Thus, under *Rivera*, the court must first determine whether the losing party meets the threshold of indigence before applying the mitigating factors to reduce costs as necessary. [Citations omitted.]

In the instant case, Plaintiff has failed to make a threshold showing of indigence. There is no reason to believe that she cannot pay costs either now or in the future. Plaintiff's self-described average income is $55,000 per year, and she owns a house and a new car. Furthermore, Plaintiff has submitted no evidence that she expects to lose her job or income at any time in the near future. Plaintiff's claim of financial inability to pay costs simply cannot stand. See *Rivera*, 469 F.3d 631 (rejecting claim of indigency where plaintiff was a single mother of four children with a monthly income of $1,800, no real estate or other assets and no source of child support payments).

Similarly, here, plaintiff has not made a showing of indigency. To the contrary, he has had the full free support of plaintiff's counsel's two law firms in this case; the financial support of the Patriot Guard Riders; and the ability to raise funds through a Website which was at one time reported to be over $10,000, and appears to be ongoing.[1]   Further, he had many supporters present at trial,

---

[1] The Website of www.matthewsnyder.org is still active as of October 17, 2009, and includes this language under "How to Help:" "You can also contribute to this cause through our secure donation page. All donations are being used to cover the costs associated with litigation, such as transcripts and court costs. … In the event that more money is received than necessary to pay for the costs associated with my lawsuit against Phelps and his clan, any excess money will go to benefit veterans returning from the war, in the form of a scholarship …." Also the Website indicates that checks can be sent payable to "Al Snyder Fund" to plaintiff's counsel's office. Also under "More Information" this language is found: "I have received hundreds of emails in support of my fight to right the wrong perpetrated by Phelps and his followers … Thank you again for all of the donations. The money will help

including many family members, who presumably would support him financially. Further, he testified that he received a substantial sum of money as a result of his son's death, which is not mentioned in his declaration.  Plaintiff has no one to take care of but himself, and has made no showing that his financial situation renders him incapable of paying costs.

Further, throughout this case, from start to finish, defendants urged the Court and counsel to put some limits in place.  Defendants were required to defend every aspect of their faith, their religious practices, their picketing ministry, and to travel to Baltimore repeatedly to do so.  Further, even if plaintiff pursued this case in good faith, without bias or untoward purpose, this Court said in *Wyne v. Medo Industries, Inc.*, 329 F.Supp.2d 584, 587 (D.Md. 2004): "However, the good faith pursuit of rights, alone, does not provide sufficient basis to avoid the presumptive taxation of costs.  [Citation omitted.]  The Fourth Circuit has stated that considering good faith as an independent basis for denial of costs 'would frustrate' the operation of Rule 54(d)(1) because the losing party in most cases has acted in good faith,' [citations omitted]."  Further, in that case, plaintiff claimed inability to pay.  This Court rejected that claim, saying at 329 F.Supp. at 588:  "While Plaintiffs maintain that they are of 'modest means', they have not asserted that it would be difficult or impossible for them to pay the costs delineated in Defendant's Bill of Costs.  …  In fact, no record has been established that would permit this Court to conclude these Plaintiffs should be relieved of their duty to pay costs.  Merely stating that one is of 'modest means' is

---

defray the costs of my lawsuit against Mr. Phelps and provide my lawyers the ability to fight back."

insufficient to overcome the presumption that the losing party must pay the prevailing party's costs.  [Citations omitted.]"

Given all these circumstances, defendants submit that this case should have been stopped at the motion to dismiss stage; there should have been no discovery or discovery costs; and there should have been no trial or trial costs. Defendants repeatedly raised First Amendment issues with the Court, and those issues were ridiculed by plaintiff's counsel, even to the degree that plaintiff filed a motion in limine to try to prevent a First Amendment defense being made in this case.

Rule 26(b)(4)(C) would permit the Court to require reimbursement of the costs paid to Dr. Willard for the time he spent in deposition.  That rule says that unless manifest injustice would result, the court shall require the party seeking discovery to pay the expert a reasonable fee for time spent in the deposition.  Given that this case should not have proceeded to discovery, manifest injustice will result if these costs are not reimbursed.

Rule 54(d) provides that unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorneys' fees—should be allowed to the prevailing party.  28 U.S.C. § 1920 specifies that the following costs may be recovered under Rule 54(d):  fees of the clerk; fees for transcripts; fees for printing and witnesses; fees for copies of papers necessarily obtained for use in the case; docket fees; and compensation of court-appointed experts and interpreters.  Rule 54(d) creates a presumption favoring the award of costs to the prevailing party.

With respect to expert witness fees, while as a rule those fees are limited to the items allowed by 28 U.S.C. § 1821 (which includes $40 per day and costs of travel), in this case defendants submit that the Court should exercise its discretion and award all of the fees, given that defendants should not have been put on trial; not been required to respond to challenges to their religious beliefs and practices; and not required to respond to claims of mental and emotional or physical injury by plaintiff which he and his philosophically-aligned psychologist expert attributed to defendants' protected words.

Therefore, defendants request that the Court award all of the costs set out in and attached to the Bill of Costs submitted herein.

PAGES 13 AND 14 ARE INTENTIONALLY OMITTED.

PLEASE PROCEED TO NEXT PAGE.

Respectfully submitted,


_____/s/_____
Jonathan L. Katz
D.Md. Bar No. 07007
Jon Katz, P.C.
8720 Georgia Avenue, Suite 703
Silver Spring, Maryland 20910
(301) 495-7755 – phone
(301) 585-7733 – fax
jon@katzjustice.com
Attorney for Defendants Westboro Baptist Church,
Inc. and Fred W. Phelps, Sr.


(Pro se defendants' original signatures are being
mailed to the court (by FedEx) and the parties)
Shirley L. Phelps-Roper
3640 Churchill Road
Topeka, KS 66604
785-640-6334
Defendant Pro Se

(Pro se defendants' original signatures are being
mailed to the court and the parties)
Rebekah A. Phelps-Davis
1216 Cambridge
Topeka, KS 66604
785-640-5431
Defendant Pro Se

Certificate of Service

I certify that the foregoing Defendants' Memorandum in Support of Bill of Costs,
and all attachments thereto, was served by the CM/ECF filing system on October 30,
2009, on counsel for plaintiff, and by FedEx next day delivery on October 29, 2009, to:
Mr. Sean E. Summers, Esq.
Mr. Craig Tod Trebilcock, Esq.

_/s/_____
Jonathan L. Katz

14