
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Albert Snyder,
      Plaintiff,

vs.         Case No. 06-cv-1389

Fred W. Phelps, Sr., et al.,

      Defendants.

## DEFENDANTS' REPLY TO: PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' BILL OF COSTS

Defendants submit the following reply to Plaintiff's Brief in Opposition to Defendants' Bill of Costs. In addition to the arguments and authorities set forth below, defendants fully incorporate all arguments and authorities submitted with their Bill of Costs on October 30, 2009, as though set out herein.

Plaintiff contends costs should be denied because the case was close and difficult and plaintiff brought the case in good faith. The reason given for the claim that the case was close and difficult was that plaintiff prevailed at the trial court level. The plaintiff did not fully prevail at the trial court level, and in fact two counts were thrown out on summary judgment. Further, and more important, as the Fourth Circuit said, this case should never have gone to the jury, at all, or with the legally erroneous instruction. A jury verdict in plaintiff's favor is not legally justified in this case, because the legal questions were not appropriate for a jury; further, the instruction on the First Amendment was given in error, and thus misled the jury. "As explained below, the Defendants correctly contend that the district court erred in permitting the jury to decide legal issues

1

reserved to the court, and then by denying the Defendants' request for judgment as a matter of law.  Assuming that the district court otherwise applied the proper legal standards to its analysis of the Defendants' First Amendment contentions, it fatally erred by allowing the jury to decide relevant legal issues." *Snyder v. Phelps*, 580 F.3d 206, 2009 U.S.App. LEXIS 21173 at 33-34.

Further, this was not a complicated case, legally or factually.  As the Fourth Circuit said, the facts are largely undisputed, *Snyder v. Phelps, supra*, at 3.  In addressing the fundamental First Amendment issues in this case, the Fourth Circuit referred to and relied on at least fourteen Supreme Court cases going back as far as the 1940's. Attempting to attach tort liability to protected speech violated fundamental established organic law.  "A case's closeness 'is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case.' *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986)." *Virginia Panel Corp. v. Mac Panel Co.*, 203 F.R.D. 236, 237 (W.D.Va. 2001).  There was very limited evidence to sift through in this case; and the law of the case is well established in Supreme Court precedents.  Further, "[t]he closeness and difficulty of a case is a factor that may be considered but, in the absence of other relevant factors, does not warrant an exercise of discretion under Rule 54(d).  See *White & White*, 786 F.2d 728." *Virginia Panel, supra*, 203 F.R.D. at 238.

Plaintiff contends that defendants' conduct prior to and during litigation should lead to an order denying costs.  The actions by defendants which are alleged to be

misconduct are 1) filing motions in the case, 2) picketing during the case and 3) disrupting the funeral.

Both parties in this case filed motions; that is the nature of litigation. The vast majority of the motions filed by defendants were to raise the First Amendment issues, on which they ultimately prevailed. As noted earlier, motions for summary judgment were granted on two of the five theories, and the Fourth Circuit found that as a matter of law all of the claims should have been dismissed. The only way to properly preserve the First Amendment issues in this case was to raise the issues at all junctures, including at the motions to dismiss or for summary judgment before trial, during trial at key points in time, such as related to instructions, on various evidentiary issues, at the close of the plaintiff's case, at the close of the defendants' case, and post-trial. The First Amendment issues could not have been properly presented to the Fourth Circuit if they had not been fully raised, briefed and preserved at each of these points. Further, that was the defense in this case. Defendants did not raise defenses or issues that were not valid and timely, and they did not in any manner by raising First Amendment issues, delay the proceedings. There is no merit to the claim that defendants acted improperly by defending the claims in this case, raising all procedural, jurisdictional and constitutional issues necessary.

To say costs should be denied because defendants picketed on public sidewalks during the pendency of this case or the trial of this case, is to go down the same path of error that the original claims took. The Fourth Circuit has clearly enunciated that the picketing is protected, as have other courts; and this conclusion is based on well settled law. Indeed, even during the trial this Court recognized that picketing was defendants'

right. The very error in thinking that led to a full reversal of the verdict in this case is offered again, with plaintiff claiming, in essence, that defendants should be penalized for engaging in protected religious picketing activities – which defendants' church does every day – including during the days this case pended and was in trial. This claim should be fully rejected as utterly abhorrent to the First Amendment.

Plaintiff's bare assertion that it is undisputed that the funeral was disrupted is absolutely refuted by this record. All of the evidence at trial indicated the funeral was not disrupted. The Fourth Circuit in a concurring opinion by Judge Shedd specifically stated, in finding that there was no intrusion of any kind by defendants so there was insufficient evidence to sustain a claim of intrusion upon seclusion, "**the evidence is undisputed that the church service was never disrupted,**" *Snyder v. Phelps, supra,* at 62. And again in the concurring opinion, when finding there was insufficient evidence to sustain a claim of intentional infliction of emotional distress: "As earlier noted, the protest was confined to a public area under supervision and regulation of local law enforcement **and did not disrupt the church service**." *Id*. at 67; emphasis added.

The kind of misconduct involved in the authorities relied on by plaintiff in claiming defendants engaged in misconduct that should disqualify them from recovering the costs they incurred in this case is not remotely relevant to this case. For instance, in *Teague v. Bakker*, 35 F.3d 978 (4th Cir. 1994), costs were denied to defendants ***where defendants had defrauded a person*** of modest means, combined with the relatively closeness and difficulty of the case. In *Square Construction Co. v. Washington Metropolitan Area Transit Authority*, 800 F.2d 1256 (4th Cir. 1986), the prevailing party deliberately withheld a critical piece of evidence in proceedings before an administrative

4

agency, which prevented the other party from fully presenting its case; this led to due process issues which prolonged the litigation "immeasurably and unnecessarily and was persisted in through the previous appeal to this court," 800 F.2d at 1266-1267.  In *Virginia Panel*, *supra*, 203 F.R.D. at 238, the Court said the prevailing party resumed the manufacture and sale of products previously enjoined by the Court; because of this, when the party prevailed on an affirmative defense of governmental immunity, costs were still denied.  See also *USM Corporation v. SPS Technologies, Inc.*, 102 F.R.D. 167 (N.D.Ill. 1984) (where party committed actionable fraud upon the Patent Office and that fraud operated to the detriment of plaintiff, even though on appeal the fraud was not sufficient to invalidate the Villo patent, but the appeals court expressly declined to review the fraud finding, costs denied to the prevailing party).

This case does not involve any kind of failure to provide evidence; fraudulent behavior in or out of the litigation; or anything else in or out of the case that could be called misconduct within the law.  Defendants said some words; albeit words that many do not like; they were words which were religious speech; protected under the First Amendment; about issues the Fourth Circuit held are issues of public importance (including the issue of homosexuals in the military, the sex-abuse scandal within the Catholic Church, and the political and moral conduct of the United States and its citizens, *Snyder v. Phelps, supra*, at 38); in public places; in compliance and obedience to all laws. There is no basis for any claim of misconduct in this case, either in defendants presenting a defense in this case, or in defendants engaging in protected public speech.

Plaintiff next says he is unable to pay the costs.  The difficulty with this position is that plaintiff has not substantiated that it is so.  A short declaration from plaintiff

indicates a steady income and limited expenses (though no amounts on any were provided).  It should be noted that this same sparse and legally-insufficient declaration was submitted with plaintiff's filings to the Fourth Circuit; defendants there submitted legal authorities including from this Court and the Fourth Circuit reflecting the *requirement* that a party seeking an exemption from the presumption that costs will be taxed *bear the burden of demonstrating* inability to pay.  Even so, in the face of these legal authorities which reflect a well-settled rule of law, plaintiff has again submitted a sparse, legally-insufficient, unsupported so-called declaration.  There appears to be a purposeful disregard of the burden of proof plaintiff has in this regard, and for this reason standing alone the request for exemption to the general rule should be denied.

Further, the Court will recall that plaintiff received death benefits from the government as the result of his son's death.  His other children are grown and he is divorced so he has only himself to care for.  As for the statement in the declaration that counsel are serving *pro bono*, that is not an established fact in the record; the contract between plaintiff and his counsel has not been provided; and indeed the more common practice is a contingency fee agreement between the plaintiff and counsel in civil litigation.  Thus it is not even clear what that statement would mean in this context.  Further, what arrangement has been made between them about costs is not relevant to the question of whether costs should be paid.  Plaintiff has not established indigency or inability to pay.

Further, plaintiff and his counsel have a Website, apparently maintained by counsel, but with content provided by plaintiff.  This Website is used to solicit donations and plaintiff has stated that over $10,000 had been raised as of the time of trial.  (Since

6

plaintiff has made numerous media appearances about this case, including on Fox news, perhaps the donations have increased.)  Plaintiff and his counsel had control of the litigation; they had control of pressing for millions on various tort theories; they initiated most of the depositions taken; and they called most of the witnesses who testified at trial. They did all this knowing there were significant, substantial and serious First Amendment issues in this case; and knowing that litigation is expensive.  Further, by establishing a Website for the stated purpose of raising funds for expenses in this case, plaintiff and his counsel have conceded that this litigation includes heavy, substantial costs.  Thus, plaintiff should not now be heard to claim the expenses incurred were excessive; or that the funds raised could not and should not be used to reimburse defendants for their expenses.

In *Smith v. Augustine*, Case No. 07 C 81, 2009 U.S.Dist. LEXIS 51860 (N.D. Ill., June 18, 2009), where the Court taxed costs against an individual plaintiff in the amount of over $35,000, plaintiff claimed she was unable to pay because of her income level and other financial obligations.  The Court rejected this claim saying at 2009 U.S. Dist. LEXIS 51860 at 5-6:

> …. Plaintiff cites *Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir. 2006), for the contention that a losing party's claimed inability to pay costs can be enough to overcome the Rule 54(d) presumption and prevent a court from assigning costs.  Plaintiff misconstrues the indigency analysis set forth in *Rivera*.  *Rivera* requires the court to "make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future" before examining "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case" to determine whether allowing costs is still reasonable. *Rivera*, 469 F.3d at 635 (internal quotation omitted).  Thus, under *Rivera*, the court must first determine whether the losing party meets the threshold of indigence before applying the mitigating factors to reduce costs  as necessary.  [Citations omitted.]

7

> In the instant case, Plaintiff has failed to make a threshold showing of indigence. There is no reason to believe that she cannot pay costs either now or in the future. Plaintiff's self-described average income is $55,000 per year, and she owns a house and a new car. Furthermore, Plaintiff has submitted no evidence that she expects to lose her job or income at any time in the near future. Plaintiff's claim of financial inability to pay costs simply cannot stand. See *Rivera*, 469 F.3d 631 (rejecting claim of indigency where plaintiff was a single mother of four children with a monthly income of $1,800, no real estate or other assets and no source of child support payments).

In *Cherry v. Champion International Corporation*, 186 F.3d 442 (4th Cir. 1999) the Court reversed a trial court order denying costs when a plaintiff claimed modest means and financial hardship. The trial court had taken detailed evidence about the income and assets of the plaintiff and concluded that she should not be required to pay costs when she had access to marital income of $70,000 per year and had collected $30,000 from a 401(k) some of which she spent on discretionary items like a truck and motorcycle. The Court said that "inability to pay" could be a basis to deny costs – not modest means; not financial hardship. The Court said that it would be inequitable to deny costs with the plaintiff having access to income and assets. Here, plaintiff has indicated he has ongoing income; he has not made any attempt to demonstrate a lack of assets, or overriding costs for daily living. He has not spoken to his overall financial situation, which he is required to do if he wants to avail himself of the exception to the general rule. Rule 54(d)(1) creates a presumption that costs are to be awarded to the prevailing party. See *Bass v. E. I. DuPont de Nemours & Company*, 324 F.3d 761 (4th Cir. 2003). To demonstrate entitlement to an *exception* to this general rule, plaintiff is obligated to show inability to pay. He has not made such a showing. For instance, plaintiff could have provided his tax returns for the last few years; he could have provided a financial statement showing his assets and liabilities; he could have explained what became of the funds he received from

his son's death benefits; he could have described any extraordinary medical, family or other obligations he has; he could have discussed any retirement fund in which he may be vested; he could have discussed any vehicles or other significant items he owns, and whether there is any debt on those items remaining; he could have described how much he collected in donations from his Website, and explain how those funds were expended; he could have discussed any barriers to continued solicitation of donations that he thinks he may exist; etc. See, e.g., *Dino Broccoli v. Echostar* Communications, 229 F.R.D. 506 (D.Md. 2005) (plaintiff demonstrated inability to pay by showing current income of $3,627, from a job with an hourly pay of $7.50; following a long period of unemployment; and showed he did not own or have an interest in any real property or valuable personal property; did not own or have an interest in any bank or savings and loan accounts; etc.) Instead, plaintiff here just made a general unsubstantiated statement that reflects he has ongoing income and typical ongoing expenses, none of which were quantified; and he provided no information about his assets or any other income to which he has access. This is not a sufficient showing to warrant application of the exception to the general rule, particularly given the widely publicized solicitation of donations for costs of litigation in which he and his counsel have engaged. There simply has been no showing of inability to pay, and in fact on the somewhat limited record made, the opposite showing has been made, to wit, he *is*, in fact, able to pay these costs. There is no equitable basis in this case for shifting the costs which the law presumes will be taxed against the losing party.

Plaintiff objects to the rate of $.50 per page for photocopying costs. This is the rate used by this Court, as well as the Fourth Circuit. See

http://www.mdd.uscourts.gov/publications/forms/feesnew.pdf (last viewed 11/15/2009).

"**SCHEDULE OF FEES - NOT ALL INCLUSIVE** (Revised 6/29/2009): **Copy Fees:** Paper Documents (per page) - $ .50. Also see http://www.ca4.uscourts.gov/pdf/feeschedule.pdf (last viewed 10/27/2009). "Fee for Reproducing any Record or Paper, if Produced from Original Document … $.50 per page." It is also the rate that was (at least in 1997) included in 28 U.S.C. § 1914(4) for copy charges by the Clerks of the United States District Courts, see, e.g., *Mary M. v. North Lawrence Community Sch. Corp.*, 951 F.Supp. 820, 829, 833 & HN 10 (S.D.Ind. 1997). Plaintiff has made no showing that this rate is unreasonable or should not be applied in this case.

Plaintiff says costs not raised with the Fourth Circuit Court of Appeals should not be allowed; and that costs included in the Bill of Costs with the Fourth Circuit should not be included in costs in the Bill of Costs before this Court. Rule 39, Federal Rules of Appellate Procedure, and the Fourth Circuit's Local Rule, explicitly describe what to include before the Fourth Circuit; and this Court's Rule 109 and Bill of Cost form require inclusion of the costs taxed by the Fourth Circuit in the Bill of Costs form before this Court. Rule 39 states:

> **Rule 39. Costs**
> \*\*\*\*
> **(d) Bill of Costs: Objections; Insertion in Mandate.**
> (1) A party who wants costs taxed must — within 14 days after entry of judgment — file with the circuit clerk, with proof of service, an itemized and verified bill of costs.
> (2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.
> (3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate

issues before costs are finally determined, the district clerk must — upon the circuit clerk's request — add the statement of costs, or any amendment of it, to the mandate.

**(e) Costs on Appeal Taxable in the District Court.** The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
(1) the preparation and transmission of the record;
(2) the reporter's transcript, if needed to determine the appeal;
(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
(4) the fee for filing the notice of appeal.

**Local Rule 39(a). Printing Costs**.
**\*\*\*\***
**Local Rule 39(c). Recovery of Costs in the District Court.**
The only costs generally taxable in the Court of Appeals are: (1) the docketing fee if the case is reversed; and (2) the cost of printing or reproducing briefs and appendices, including exhibits.

Although some costs are "taxable" in the Court of Appeals, all costs are recoverable in the district court after issuance of the mandate. If the matter of costs has not been settled before issuance of the mandate, the clerk will send a supplemental "Bill of Costs" to the district court for inclusion in the mandate at a later date.

Various costs incidental to an appeal must be settled at the district court level. Among such items are: (1) the cost of the reporter's transcript; (2) the fee for filing the notice of appeal; (3) the fee for preparing and transmitting the record; and (4) the premiums paid for any required appeal bond. Application for recovery of these expenses by the successful party on appeal must be made in the district court, and should be made only after issuance of the mandate by the Court of Appeals. These costs, if erroneously applied for in the Court of Appeals, will be disallowed without prejudice to the right to reapply for them in the district court.

Defendants followed the rules of the Fourth Circuit and this Court; and included the figure taxed by the Fourth Circuit in the Bill of Costs before this Court has required by this Court's form and rule. (Plaintiff filed an objection to the taxed costs a week out of time and a week after the mandate issued; defendants have responded to that objection with that Court; that matter is still pending as of this filing.

Based on all of the foregoing, as well as all of the materials submitted with the Bill of Costs herein, including authorities, itemizations and receipts and other supporting documents, defendants request that all costs submitted be awarded herein.  This case should not have gone to trial; the expenses defendants incurred should not have been required of them; defendants have not engaged in any misconduct, but instead defended themselves successfully against an attempt to attach tort liability to protected speech.  Because of the effort to attach tort liability to protected speech, defendants were required to retain expert witnesses; to bring witnesses from Kansas; and to themselves incur costs in traveling to Baltimore for depositions and trial.  Plaintiff has not demonstrated that any of the costs defendants incurred were unnecessary; or that he is entitled to any exception to the rule that presumes costs will be awarded to the prevailing party.  Plaintiff and his attorneys made it clear they were launching a nationwide offensive against defendants and their protected religious speech, when they filed this lawsuit.  They did this knowing that a defense would be mounted, and that the vital First Amendment issues would be raised throughout this case.  They should not now be heard to complain about the cost.

Respectfully submitted,

\_\_\_/s/_____

Jon Katz
D.Md. Bar No. 07007
Jon Katz, P.C.
8720 Georgia Avenue, Suite 703
Silver Spring, Maryland 20910
(301) 495-7755 – phone
(301) 585-7733 – fax
jon@katzjustice.com
Attorney for Defendants Westboro Baptist Church, Inc. and Fred W. Phelps, Sr.

_____

Shirley L. Phelps-Roper
3640 Churchill Road
Topeka, KS 66604
785-640-6334
Defendant Pro Se

_____

Rebekah A. Phelps-Davis
1216 Cambridge
Topeka, KS 66604
785-640-5431
Defendant Pro Se

Certificate of Service

I certify that the foregoing Defendants' Reply to Plaintiffs' Brief in Opposition to Defendants' Bill of Costs was served by ECF/CM on November 23, 2009, on counsel for plaintiff:
    Mr. Sean E. Summers, Esq.
    Mr. Craig Tod Trebilcock, Esq.

\_\_\_\_\_/s/_____
Jon Katz
D.Md. Bar No. 07007
Jon Katz, P.C.
8720 Georgia Avenue, Suite 703
Silver Spring, Maryland 20910
(301) 495-7755 – phone
jon@katzjustice.com
Attorney for Defendants Westboro Baptist Church, Inc. and Fred W. Phelps, Sr.

13